SAMPSON, APPELLEE, *v*. CUYAHOGA METROPOLITAN HOUSING

AUTHORITY ET AL., APPELLANTS.

**[Cite as *Sampson v. Cuyahoga Metro. Hous. Auth.,***

**131 Ohio St.3d 418, 2012-Ohio-570.]**

*R.C. Chapter 2744—Political-subdivision tort liability—Immunity—R.C. 2744.09(B)—Exception to immunity for civil actions by an employee "relative to any matter that arises out of the employment relationship between the employee and the political subdivision"—Civil actions alleging intentional torts may qualify as matters that arise out of the employment relationship—Political-subdivision employer not immune from liability merely because employee alleges intentional tort.*

(No. 2010-1561—Submitted September 20, 2011—Decided February 16, 2012.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 93441,

188 Ohio App.3d 250, 2010-Ohio-3415.

_____

**SYLLABUS OF THE COURT**

1.  When an employee of a political subdivision brings a civil action against the political subdivision alleging an intentional tort, that civil action may qualify as a "matter that arises out of the employment relationship" within the meaning of R.C. 2744.09(B).

2.  An employee's action against his or her political-subdivision employer arises out of the employment relationship between the employee and the political subdivision within the meaning of R.C. 2744.09(B) if there is a causal connection or a causal relationship between the claims raised by the employee and the employment relationship.

_____

**CUPP, J.**

{¶ 1}   We are asked to determine whether R.C. 2744.09(B), an exception to political-subdivision immunity from tort liability, applies in a civil action for damages filed by an employee who alleges that his political-subdivision employer committed an intentional tort against him and engaged in negligent conduct.  We conclude that R.C. 2744.09(B) may apply in such a circumstance, and we affirm the judgment of the court of appeals.

## I. Background

{¶ 2}   Darrell Sampson was employed by the Cuyahoga Metropolitan Housing Authority ("CMHA") in its maintenance department as a Serviceman V plumber.  In 2004, CMHA began an investigation into possible employee misuse of CMHA gasoline credit cards as a result of an anonymous tip that CMHA employees were using CMHA cards to fuel their personal cars.  At the conclusion of the investigation, the Cuyahoga County prosecutor gave the CMHA police approval to arrest 13 CMHA maintenance-department employees.  After considering various alternatives, CMHA officials decided to arrest the 13 suspects at a scheduled meeting of maintenance-department employees at a CMHA maintenance warehouse.

{¶ 3}   Sampson was arrested during the employee meeting after he and the other 12 employees were called to a separate area out of view of the meeting.  When Sampson was escorted from the warehouse and placed into a police vehicle, news media were in the parking lot outside.  After the arrests, CMHA issued a press release and held a press conference at its headquarters announcing the arrests.  Sampson was taken to jail and released the next day.  CMHA placed Sampson on paid administrative leave.

{¶ 4}   The county prosecutor charged, and the grand jury indicted, Sampson for the felony of theft in office and felony misuse of credit cards.  After Sampson was indicted on the charges, CMHA terminated Sampson's

employment. The day before Sampson's criminal trial, the company that issued the gas credit cards, upon being contacted for the first time by the prosecutor, declined to send a representative to testify about the credit-card records. The prosecutor had not subpoenaed any company representative to compel the company's presence at the trial. The charges against Sampson were then dismissed with prejudice by the county prosecutor.

{¶ 5} Sampson filed a grievance pursuant to the terms of his union contract, and an arbitrator sustained the grievance, concluding that CMHA had failed to present any evidence at the arbitration hearing that Sampson participated in gasoline theft. Based on his determination that CMHA terminated Sampson without just cause, the arbitrator ordered that Sampson be reinstated to his former position with full restitution of his seniority and lost wages and benefits. Sampson returned to work for CMHA as a Serviceman V, but Sampson contended that upon his return, the atmosphere was no longer tolerable, and he later resigned.

{¶ 6} Sampson filed a complaint in which he raised various intentional-tort and negligence claims arising out of his arrest by CMHA.[1] CMHA filed a motion for judgment on the pleadings with respect to all claims, and the trial court granted that motion in part, dismissing only the claim for negligent infliction of emotional distress. CMHA later filed a motion for summary judgment on all the remaining claims, alleging immunity from suit under R.C. Chapter 2744, the Political Subdivision Tort Liability Act, but the trial court denied the motion, finding that a genuine issue of material fact still existed as to whether CMHA's conduct was wanton or reckless. But the trial court also concluded that the

---

1. The claims were intentional infliction of emotional distress, negligent infliction of emotional distress, abuse of process, and negligent misidentification.

express exception to immunity contained in R.C. 2744.09(B) did not apply, because Sampson's claims did not arise out of the employment relationship.

{¶ 7} CMHA appealed from the trial court's order under R.C. 2744.02(C). The appellate court concluded that the express exception to immunity in R.C. 2744.09(B) prevented CMHA from raising immunity pursuant to R.C. Chapter 2744 and affirmed. *Sampson v. Cuyahoga Metro. Hous. Auth.,* 8th Dist. No. 93441, 2010-Ohio-1214, 2010 WL 1115797. A divided Eighth District on rehearing en banc affirmed. 188 Ohio App.3d 250, 2010-Ohio-3415, 935 N.E.2d 98. We accepted CMHA's discretionary appeal. 127 Ohio St.3d 1460, 2010-Ohio-6008, 938 N.E.2d 362.

## II. Political-Subdivision Tort Liability

{¶ 8} In 1985, the General Assembly enacted R.C. Chapter 2744, the Political Subdivision Tort Liability Act. 141 Ohio Laws, Part I, 1699. This act sets forth the general rule that political subdivisions are not liable for damages in civil actions for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision in connection with a governmental or proprietary function. R.C. 2744.02(A)(1). The act also contains exceptions to a political subdivision's immunity, as well as certain defenses to those exceptions. *See, e.g.,* R.C. 2744.02(B), 2744.03, and 2744.09.

{¶ 9} CMHA argues that it is immune from Sampson's suit pursuant to the general rule of immunity contained in R.C. 2744.02. The parties do not dispute that CMHA is a metropolitan housing authority created pursuant to R.C. 3735.27. As a consequence, CMHA is a "body corporate and politic," R.C. 3735.31, and therefore a political subdivision entitled to invoke the immunity provisions of R.C. Chapter 2744. R.C. 2744.01(F).

{¶ 10} In response, Sampson contends that R.C. 2744.09(B) applies to except his claim from political-subdivision immunity. R.C. 2744.09(B) states:

4

This chapter does not apply to, and shall not be construed to apply to, the following:

\* \* \*

(B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision.

{¶ 11} Sampson argues that his "civil action" against his employer, CMHA, is "relative to any matter that arises out of the employment relationship between" him and CMHA.[2] Thus, Sampson continues, the plain language of R.C. 2744.09(B) precludes CMHA from invoking political-subdivision immunity.

{¶ 12} CMHA contends that Sampson's intentional-tort claim is not a "matter" that "arises out of the employment relationship," because an employer's action in committing an intentional tort against an employee in the workplace necessarily occurs outside the employment relationship and cannot arise from it. In making this argument, CMHA relies on a principle from workers' compensation law first announced by this court in *Blankenship v. Cincinnati Milacron Chems., Inc.,* 69 Ohio St.2d 608, 433 N.E.2d 572 (1982). That principle states that the immunity provided to employers by the Workers' Compensation Act, specifically by R.C. 4123.74, applies only to an injury received "in the course of or arising out of" the injured employee's employment. *Blankenship* addressed the right of an employee to file a private lawsuit against the employer for tort damages, in addition to claiming workers' compensation benefits. According to the rationale applied by the *Blankenship* court, an employee could pursue a common-law action for damages in addition to obtaining workers'

---

2. In contrast, R.C. 2744.09(C) applies to claims in which the employee challenges the terms of his or her employment with the political subdivision, including wages, hours, or working conditions.

compensation benefits because when an employer intentionally harms an employee, that injury does not "aris[e] out of" the employment relationship, and the immunity provided to employers within the Workers' Compensation Act falls away. CMHA's argument further relies on a statement from a subsequent case in which the court approved and followed *Blankenship*:

> When an employer intentionally harms his employee, that act effects a complete breach of the employment relationship, and for purposes of the legal remedy for such an injury, the two parties are not employer and employee, but intentional tortfeasor and victim. * * * The [employee's] lawsuit has no bearing upon any question relating to employment.

*Brady v. Safety-Kleen Corp.*, 61 Ohio St.3d 624, 634, 576 N.E.2d 722 (1991). For ease of discussion, we will refer to this very specific type of intentional tort in the workplace as a *Blankenship* tort, although its definition has been significantly refined in the years since that case was decided. *See* R.C. 2745.01 et seq. (current codification of the *Blankenship* tort); *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 14-57 (detailing the history of the evolution of the *Blankenship* tort).

{¶ 13} We must now consider whether R.C. 2744.09(B) was meant to incorporate the *Blankenship* rationale. We hold that it was not. Initially, there is no hint in the language of the statute of any such intention. The similarity of the phrase "relative to any matter that arises out of the employment relationship" in R.C. 2744.09(B) to the language of R.C. 4123.74 does not justify importing *Blankenship*'s analysis. R.C. 2744.09(B) is designed to protect employees by allowing them to recover against their employers, who would otherwise be entitled to immunity under R.C. Chapter 2744. To undo those protections in cases

6

of the worst of employer misconduct would violate the language and frustrate the purpose of the provision.

{¶ 14} Moreover, we will not presume, without more evidence in the language of R.C. 2744.09(B), that the legislature meant to invoke the *Blankenship* rationale in the context of political-subdivision immunity. This is because the context of political-subdivision immunity is different from workers' compensation immunity. In this regard, the foundation for the workers' compensation framework is the Ohio Constitution, Article II, Section 35. This constitutional provision was designed to enable the legislature to craft laws that reflect " 'the policy compromises necessary to balance the obligations and rights of the employer and employee in the workers' compensation system.' " *Kaminski*, 125 Ohio St.3d 250, 2010-Ohio-1027, 927 N.E.2d 1066, ¶ 74-75, quoting *Bickers v. W. & S. Life Ins. Co.*, 116 Ohio St.3d 351, 2007-Ohio-6751, 879 N.E.2d 201, ¶ 23-24. The Workers' Compensation Act that we know today is the result of that balancing of interests: workers relinquish their common-law remedies in exchange for a more certain recovery, while employers relinquish common-law defenses in exchange for a more limited liability. *Blankenship,* 69 Ohio St.2d at 614, 433 N.E.2d 572; *Brady,* 61 Ohio St.3d at 633-634, 576 N.E.2d 722. This limitation of liability was achieved by the grant of immunity from common-law suits contained in R.C. 4123.74.

{¶ 15} In contrast, R.C. 2744.09(B) must be read in light of the entirely different policies underlying the Political Subdivision Tort Liability Act. "R.C. Chapter 2744 is the General Assembly's response to the judicial abrogation of common-law sovereign immunity. Its manifest purpose is the preservation of the fiscal integrity of political subdivisions. *Wilson v. Stark Cty. Dept. of Human Servs.* (1994), 70 Ohio St.3d 450, 453, 639 N.E.2d 105." *Estate of Graves v. Circleville,* 124 Ohio St.3d 339, 2010-Ohio-168, 922 N.E.2d 201, ¶ 12. Unlike the Workers' Compensation Act, R.C. Chapter 2744 is not the result of any

bargain between employer and employee, because the employer-employee relationship is not its subject. Rather, R.C. 2744.09(B) was enacted in the context of political-subdivision immunity.

{¶ 16} Upon consideration of the differences between workers' compensation policies and political-subdivision-tort-immunity policies, we decline to incorporate the *Blankenship* rationale and corresponding line of cases into a political-subdivision-immunity context and the exception contained in R.C. 2744.09(B). The policies underlying workers' compensation are simply too different from political-subdivision-tort-immunity policies. And when R.C. 2744.09(B) is read without the *Blankenship* gloss, the phrase "relative to any matter that arises out of the employment relationship" is clear. The phrase requires only a causal connection between the subject matter of the civil action and the employment relationship.

{¶ 17} Therefore, in accordance with the foregoing discussion and with our duty to apply plain statutory language as written, we hold that when an employee of a political subdivision brings a civil action against the political subdivision alleging an intentional tort, that civil action may qualify as a "matter that arises out of the employment relationship" within the meaning of R.C. 2744.09(B). Further, we hold that an employee's action against his or her political-subdivision employer arises out of the employment relationship between the employee and the political subdivision within the meaning of R.C. 2744.09(B) if there is a causal connection or a causal relationship between the claims raised by the employee and the employment relationship.

{¶ 18} Having concluded that *Blankenship* has no relevance to political-subdivision immunity, we now must determine whether there is any genuine issue of material fact concerning whether Sampson's civil action is one that is "relative to any matter that arises out of the employment relationship" within the meaning of R.C. 2744.09(B). The trial court found that there was no genuine issue and that

R.C. 2744.09(B) did not apply. The appellate court disagreed, holding that "all of Sampson's claims, including his claim for intentional infliction of emotional distress, clearly arose out of his employment relationship, thus barring CMHA from asserting immunity pursuant to R.C. 2744.09(B)." We agree with the court of appeals.

{¶ 19} Because this case was decided on summary judgment, our review is de novo. *Comer v. Risko,* 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. We hold that the evidence presented to the trial court established a genuine issue of material fact that would allow Sampson's claims to survive summary judgment. As set forth below, the facts in this case could lead reasonable minds to conclude that Sampson's claims arose out of his employment relationship with CMHA. *See* Civ.R. 56(C).

{¶ 20} First, the record contains evidence that the alleged tort arose from an accusation by the employer that the employee had stolen from the employer by using the employer-owned gasoline credit cards for personal needs. This was not, for example, conduct that was alleged to have been committed by the employee against a third party with no relationship to the employer. Rather, CMHA accused Sampson of engaging in misconduct in his duties as a plumber, one of which included responding to CMHA service calls and emergencies throughout the county in a CMHA-owned vehicle assigned by CMHA to the employees on a daily basis. CMHA had policy statements pertaining to the employees' use of the gas cards, in which possible disciplinary actions for improper use of the cards were detailed. Moreover, CMHA investigated all the plumbers in the maintenance department, not just Sampson.

{¶ 21} Second, Sampson presented evidence that the investigation of CMHA employees was conducted entirely by CMHA police, based on CMHA documents. Third, Sampson adduced evidence that his arrest occurred at a CMHA-called mandatory meeting of all CMHA employees as a part of their

9

regular CMHA work day. The employees were told to report to the off-site CMHA warehouse for work assignments. The arrests were effected by CMHA police by prearrangement with CMHA administrators at the CMHA warehouse. The arrested employees were handcuffed, searched, and physically removed by armed CMHA police in front of their fellow employees to a waiting police van with cameras recording the scene. Fourth, Sampson presented evidence that his arrest by CMHA police was publicized by CMHA at the mandatory meeting and through a subsequent press release and press conference. The timing of the arrest was intended to send a message of deterrence to other employees of CMHA. Fifth, Sampson's evidence shows that he was terminated from his employment by CMHA, that he grieved the termination through his CMHA and union arbitration agreement, and that he was reinstated by CMHA.

{¶ 22} All in all, the facts, supported by the evidence, could lead reasonable minds to conclude that Sampson's civil action arose from the employment relationship and, therefore, is excepted from immunity under R.C. 2744.09(B).

### III. Conclusion

{¶ 23} In view of the foregoing analysis, we conclude that the appellate court properly determined that reasonable minds could conclude that the claims in Sampson's civil action, if proven, are matters that arise out of the employment relationship between Sampson and CMHA and that pursuant to R.C. 2744.09(B), CMHA is not entitled to the immunity provided by R.C. Chapter 2744. Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, and MCGEE BROWN, JJ., concur.

LANZINGER, J., concurs in judgment only.

_____

**LANZINGER, J., concurring in judgment only.**

{¶ 24} I concur in the judgment.

{¶ 25} In arguing that a political-subdivision employer is immune from liability for a workplace intentional tort, appellants rely on decisions by this court in workers' compensation cases holding that an employer's intentional tort against an employee does not arise out of the employment relationship. Thus, appellants argue, political subdivisions remain immune from liability for workplace intentional torts because such torts do not "arise[] out of the employment relationship" as required by R.C. 2744.09(B).

{¶ 26} Although certain aspects of appellants' position are persuasive, I believe that we must read the statute as written and, if a legislative response is necessary, wait for it to occur. A political subdivision does not have the protection of R.C. Chapter 2744 immunity if its employee asserts a civil action "relative to *any matter that arises out of the employment relationship* between the employee and the political subdivision." R.C. 2744.09(B). As it is now defined, an intentional tort arises out of the employment relationship.

{¶ 27} R.C. 2745.01 defines "intentional tort" as follows:

(A) In an action brought against an employer by an employee, or by the dependent survivors of a deceased employee, for damages resulting from an intentional tort *committed by the employer during the course of employment*, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.

(B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.

(Emphasis added.)

{¶ 28} The General Assembly has rejected the artificial theory set forth in *Blankenship v. Cincinnati Milacron Chems., Inc.,* 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), and its progeny that intentional torts arise outside the employment relationship and cannot be received in the course of employment. I believe that in this case we are acknowledging that an intentional tort, as it has been redefined by statute, may indeed arise in the course of employment. The legal fiction that such a tort arises outside of the employment relationship should be put to rest, and language that was invoked initially to broaden workers' recovery should not now be used to immunize political subdivisions.

{¶ 29} I agree that there are material issues over whether the facts in this case set forth a civil action against CMHA "relative to any matter that arises out of the employment relationship" between Sampson and CMHA. I therefore join in the judgment. This case must therefore continue to trial, subject to proof of an intentional tort as redefined by R.C. 2745.01—that is, that the employer acted with the intent to injure or with belief that the injury was substantially certain to occur, meaning that the employer acted with deliberate intent to cause the injury. *See* R.C. 2745.01(A) and (B).

{¶ 30} Because R.C. 2744.09(B) removes the protection of immunity for a political-subdivision employer for injuries to its employees that arise out of the employment relationship, a political subdivision is at risk for liability in intentional-tort suits that satisfy the terms of R.C. 2745.01. If the General Assembly wishes to expand immunity to protect the political-subdivision employer and leave only the individual tortfeasor liable, as appellants argue is the legislative intent, then the General Assembly must amend the statute to do so.

_____

Nancy C. Schuster, for appellee.

Roetzel & Andress, L.P.A., Stephen W. Funk, Aretta K. Bernard, and Karen D. Adinolfi, for appellants.

Christina M. Royer, Ltd., and Christina M. Royer; Gittes Law Group, Frederick M. Gittes, and Jeffrey P. Vardaro; Paul L. Cox; and Hunter, Carnahan, Shoub & Byard and Russell E. Carnahan, urging affirmance for amici curiae Fraternal Order of Police of Ohio, Inc., Fraternal Order of Police, Capital City Lodge No. 9, Akron Firefighters IAFF Local 330, and Ohio Employment Lawyers Association.

Schottenstein, Zox & Dunn Co., L.P.A., Stephen L. Byron, Rebecca K. Schaltenbrand, and Stephen J. Smith; and John Gotherman, urging reversal for amicus curiae Ohio Municipal League.

_____