[Cite as *Piazza v. Cuyahoga Cty.*, 2017-Ohio-8163.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104724**

## MARCELLA KING PIAZZA

PLAINTIFF-APPELLEE

vs.

## CUYAHOGA COUNTY, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED IN PART; DISMISSED IN PART

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-850042

**BEFORE:** Keough, A.J., Stewart, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** October 12, 2017

**ATTORNEYS FOR APPELLANT**

Robert J. Triozzi
Director of Law
Robin M. Wilson
Assistant Director of Law
Cuyahoga County Law Department
2079 East 9th Street, Seventh Floor
Cleveland, Ohio 44115


**ATTORNEYS FOR APPELLEE**

Nancy C. Schuster
Shuster & Simmons Co.
2913 Clinton Avenue
Cleveland, Ohio 44113

Brian M. White
4815 Fulton Drive, N.W., Suite 200
Canton, Ohio 44735

Michael K. Farrell
Mark Keller Norris
Baker & Hostetler, L.L.P.
Key Tower
127 Public Square, Suite 2000
Cleveland, Ohio 44114

KATHLEEN ANN KEOUGH, A.J.:

{¶1} Defendant-appellant, Cuyahoga County, appeals the trial court's decision denying its motion for summary judgment based on political subdivision immunity and the statute of limitations. For the reasons that follow, we affirm in part and dismiss in part.

{¶2} Marcella King Piazza ("Piazza") began working for the county auditor's office in July 2003. She was transferred to the county board of revision and served as the office manager. Subsequently, in August 2010, Piazza was transferred to the Department of Justice Affairs as a victim advocate. Around the time of Piazza's transfer, the Plain Dealer Publishing Company ("Plain Dealer") started publishing a series of articles about the Cuyahoga County Board of Revision, claiming that an investigation was underway into the employees and board members' work habits and mismanagement within the department. One article characterized the matter as a "scandal."

{¶3} On March 9, 2011, Piazza was terminated from employment with the county, along with Robert Chambers and Hanane Hmada, who previously worked in the board of revision.

{¶4} Within 90 minutes of her discharge, Piazza received a telephone call from a Plain Dealer reporter seeking comment on her discharge; Piazza declined to comment. Approximately 20 minutes later, at 11:50 a.m., the Plain Dealer published the initial article on www.cleveland.com, under the headline: "Cuyahoga County Executive Ed

FitzGerald fires three employees tied to the boards of revision scandal." In the article, former County Executive Edward FitzGerald's spokesperson explained that the firing was "due to our reorganization of the board of revision." However, the cleveland.com post explained that the three terminated employees, including Piazza, were reassigned to other county departments in August after the Plain Dealer reported about the poor work habits of board employees. The article repeated details of corruption at the board of revision, including that delays by the board members had cost local school districts and public agencies millions of dollars in tax revenue, and that altered tax documents had reduced property values in the county by more than $400 million.

{¶5} A second article, titled, "Cuyahoga County Executive Ed FitzGerald says he couldn't justify keeping reassigned board of revision workers in new positions," was posted later that day at 6:22 p.m. The Plain Dealer stated that "FitzGerald said he can't justify budgeting money for the positions Chambers and two other board castoffs were moved to, so * * * he fired all three." The article then identified the three employees — one of whom was Piazza. FitzGerald was quoted as saying "instead of terminating them, the previous administration reassigned them. * * * We can't afford to reshuffle people for their own job security." Included in this article was a photograph of Piazza — a photograph that was provided by the county.

{¶6} Although she was not a board member, Piazza claimed that the articles created an inference that she was a board member and involved in the "county corruption scandal."

{¶7} In 2015, Piazza filed a complaint against Cuyahoga County ("the county") and the Plain Dealer alleging false light invasion of privacy. The allegations stemmed from the quoted statements by FitzGerald, which were printed by the Plain Dealer. Piazza claimed that FitzGerald made the statements with a "reckless disregard for the truth or falsity of his statement."

{¶8} The county moved for summary judgment, contending that it was immune from liability pursuant to R.C. 2744.02, and that Piazza's complaint was time-barred. In response, Piazza claimed that res judicata barred the county's claim of immunity. The trial court denied the county's motion, concluding that "genuine issues of material fact exists [sic] and [Piazza's] false light claim is not time-barred, nor does political subdivision immunity apply to [Piazza's] claim arising from her employment relationship with [the county]."

{¶9} The county appeals on the authority of R.C. 2744.02(C), raising five assignments of error that will be addressed together where appropriate.

I. Political Subdivision Immunity

{¶10} In its first, second, third, and fourth assignments of error, the county contends that the trial court erred in denying its motion for political subdivision immunity on Piazza's sole claim for false light invasion of privacy. Specifically, the county raises the following assignments of error:

> Error No. 1: The trial court erred in finding that political subdivision immunity did not apply to plaintiff's sole claim for false light invasion of privacy.

Error No. 2:   The trial court erred in denying Appellant's Motion for Summary Judgment where none of the exceptions to political subdivision immunity applied.

Error No. 3:   The trial court erred in finding that plaintiff's claim arose from her employment relationship where plaintiff was not an employee and no causal connection or causal relationship between plaintiff's false light claim and the employment relationship was established.

Error No. 4:   The trial court erred in denying Cuyahoga County's Motion for Summary Judgment where Plaintiff's sole opposition was an erroneous contention that res judicata barred Appellant's statutory immunity and statute of limitations arguments and failed to oppose summary judgment with proper evidence.

{¶11} An appellate court review a trial court's decision on a motion for summary judgment de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).  Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can only reach a conclusion that is adverse to the nonmoving party.  *Zivich v. Mentor Soccer Club, Inc*., 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

{¶12} The party moving for summary judgment bears the burden of demonstrating that no material issues of fact exist for trial.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).  The moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims.  *Id*.  After the moving party has satisfied this

initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that there is a genuine issue of material fact. *Id.*

{¶13} Determining whether a governmental entity is immune from tort liability involves a three-step analysis. *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 845, ¶ 10. First, R.C. 2744.02(A)(1) sets forth the general blanket immunity applicable to political subdivisions. It provides that a political subdivision is generally not liable in a civil action for injury, death, or loss to persons or property incurred while performing governmental or proprietary functions. To overcome this statutory immunity, a plaintiff must show that one of the five exceptions contained in R.C. 2744.02(B) applies. If a plaintiff demonstrates that one of the five enumerated exceptions to governmental immunity applies, a political subdivision may then assert one of the defenses set forth in R.C. 2744.03(A) to revive its immunity.

{¶14} Piazza does not dispute that the county is a political subdivision and that none of the exceptions under R.C. 2744.02(B) apply in this matter. However, she contends on appeal that the county is not entitled to immunity pursuant to R.C. 2744.09, which provides,

> This chapter does not apply to, and shall not be construed to apply to, the following:
>
> * * *
>
> (B) Civil actions by an employee * * * against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision[.]

**{¶15}** Accordingly, if the provisions in R.C. 2744.09(B) apply, then the immunity provisions do not apply to this matter. Piazza maintains that her termination and the statements made in reference to it was an employment matter, so immunity does not apply. The county, however, claims that the false light invasion of privacy claim did not "arise out of the employment relationship" because Piazza had been terminated prior to the county executive's statements and prior to her filing the complaint against the county.

**{¶16}** False light invasion of privacy is an intentional tort. Typically, "an employer's intentional tort against an employee does not arise out of the employment relationship, but occurs outside the scope of employment." *Brady v. Safety-Kleen Corp.*, 61 Ohio St.3d 624, 576 N.E.2d 722 (1991), paragraph one of the syllabus. However, when the conduct forming the basis of the intentional tort arose out of the employment relationship, the employer may not have the benefit of immunity pursuant to the plain language of R.C. 2744.09(B). *Sampson v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247, paragraph one of the syllabus; *see also Davis v. Cleveland*, 8th Dist. Cuyahoga No. 83665, 2004-Ohio-6621, *Fleming v. Ashtabula Area City School Bd. of Edn.*, 11th Dist. Ashtabula. No. 2006-A-0030, 2008-Ohio-1892, *appeal not allowed*, 119 Ohio St.3d 1473, 2008-Ohio-4911, 894 N.E.2d 332, *Patrolman "X" v. Toledo*, 132 Ohio App.3d 374, 725 N.E.2d 291 (6th Dist.1999).

**{¶17}** The county contends that neither the holding in *Sampson* nor R.C. 2744.09(B) controls in this matter because Piazza was not an employee at the time she

brought her claim, and that she and the county had not had an employment relationship for more than two years prior to the filing of her complaint.

{¶18} The Eleventh District addressed this precise matter in *Fleming* and concluded that R.C. 2744.09(B) applies to matters arising from the employment relationship even after the employee has been terminated. *Id*. at ¶ 34. As recognized by *Fleming*, the legislature could have limited the application of the statute to cover only current employees; however, by using the language "relative to any matter that arises out of the employment relationship," R.C. 2744.09(B) is intended to encompass more than just current employees. *Id.*

{¶19} We agree with *Fleming* that a strict reading of the statute would deny a former employee a remedy for intentional tortious comments made after his or her employment has ended. *Id*. "To hold otherwise would encourage employers to terminate employees to avoid potential liability when an incident has occurred." *Id*. at ¶ 31.

{¶20} *Fleming's* interpretation of R.C. 2744.09(B) is consistent with this court's decision in *George v. Newburgh Hts.*, 8th Dist. Cuyahoga No. 97320, 2012-Ohio-2065. This court stated that when determining whether an individual's intentional tort claim arose out of the employment relationship with the political subdivision, the totality of the circumstances must be reviewed. In *George*, the plaintiff, a detective with the village's police department, brought an intentional infliction of emotional distress claim against the village after he was laid off. George maintained that he was subject to a smear campaign

by his fellow officers and others in the months preceding his lay-off and in the weeks immediately following. The tortious actions were allegedly a result of George's internal investigation of alleged misdoings within the police and other village departments.

{¶21} This court concluded that "the totality of the circumstances indicates that Detective George's claim * * * flowed from the actions taken by the Village in response to the internal investigation he was conducting. * * * [I]t is clear * * * that Detective George's claims stem from his employment with the Village." *Id.* at ¶ 23-24. This court made no distinction between the alleged comments made before George was laid off (employed) and after he was laid off (formerly employed) when determining whether George's claims stemmed from his "employment relationship with the Village." Accordingly, this court found that the village was not immune from liability under R.C. 2744.09(B).

{¶22} Whether there is a causal connection or causal relationship between Piazza's intentional-tort claim and her employment relationship depends on the circumstances of the case. Looking at the factual basis for Piazza's claim, it is the alleged conduct and Piazza's employment relationship that govern the applicability of R.C. 2744.09. It cannot be ignored that the comments by the county executive or his spokesperson were made within two hours of Piazza's termination. Moreover, the only relationship between Piazza and the county executive was that of employment, and the comments arose out of her employment because they were directly related to Piazza's work performance and

employment within the county. Finally, the comments explained why Piazza was terminated from employment.

{¶23} Accordingly, Piazza's claims arose out of her employment relationship with the county, and the county is not immune from liability pursuant to the express exception in R.C. 2744.09(B). The county's first, second, third, and fourth assignments of error are overruled.

## II. Statute of Limitations

{¶24} In its fifth assignment of error, the county contends that the trial court erred by finding that the false light invasion of privacy claim was not barred by the relevant statute of limitations period. This court lacks jurisdiction to address this assignment of error.

{¶25} Generally, an order denying a motion to dismiss is not a final, appealable order. *DiGiorgio v. Cleveland*, 196 Ohio App.3d 575, 2011-Ohio-5824, 964 N.E.2d 495, ¶ 4 (8th Dist.), citing *Polikoff v. Adam*, 67 Ohio St.3d 100, 103, 616 N.E.2d 213 (1993). However, under R.C. 2744.02(C), "[a]n order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."

{¶26} While the county's claim that the trial court erred by denying its motion for summary judgment based on immunity was final, its appeal from the denial of its motion for summary judgment based on the statute of limitations was not. *Riscatti v. Prime Props. Ltd. Partnership*, 137 Ohio St.3d 123, 2013-Ohio-4530, 998 N.E.2d 437, ¶ 19-20

(denial of dispositive motions based on a statute-of-limitations defense does not deny the benefit of immunity and is not a final, appealable order even though it arose along with a political subdivision's immunity claim); *Gates v. Leonbruno*, 2016-Ohio-5627, 70 N.E.3d 1110, ¶ 30 (8th Dist.), (when appealing a denial of a motion for summary judgment on immunity grounds under R.C. 2744.02(C), a party cannot raise other alleged errors concerning the denial of its motion for summary judgment).

**{¶27}** Accordingly, this assignment of error is disregarded for lack of jurisdiction.

**{¶28}** Judgment affirmed in part and dismissed in part.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

—————————

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., CONCURS;
MELODY J. STEWART, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

MELODY J. STEWART, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶29} I agree with the part of the majority opinion finding that we lack jurisdiction to address the county's statute of limitations argument. I disagree, however, with the majority's resolution of Piazza's false light invasion of privacy claim.

{¶30} R.C. 2744.09(B) creates an exception to political subdivision immunity for civil actions "by an employee * * * arising out of the employment relationship between the employee and the political subdivision." The plain meaning of the word "employee" is a person hired by, and working for, a person or entity in return for wages. For example, in the context of workers' compensation law, "employment" means "service performed by an individual for remuneration under any contract of hire, written or oral, express or implied, * * *." R.C. 4141.01(B)(1). Applying that plain and ordinary meaning, *Hewitt v. L.E. Myers Co.*, 134 Ohio St.3d 199, 2012-Ohio-5317, 981 N.E.2d 795, ¶ 16, the use of the word "employee" in R.C. 2744.09(B) carves out an exception to immunity when an action is brought against a political subdivision employer by someone who works for the employer at the time a civil action is filed: if a person is not employed by the political subdivision, that person is not, by definition, an "employee."

{¶31} The same statutory interpretation applies to the term "employment relationship." The Ohio Supreme Court has defined the "employment relationship" as "a contract of hire express or implied" with "hire" defined as "the price, reward or compensation paid for personal service of labor." *Coviello v. Indus. Comm. of Ohio*, 129 Ohio St. 589, 196 N.E. 661 (1935), paragraphs three and four of the syllabus. There can

be no "contract for hire" without "an obligation that the person denominated the employer pay the person employed." *Id*. at paragraph five of the syllabus. As written, R.C. 2744.09(B) applies only to claims filed by an "employee" and only to claims "arising out of the employment relationship between the employee and the political subdivision."

{¶32} The majority relies on *Fleming v. Ashtabula Area City Schools Bd. of Edn.*, 11th Dist. Ashtabula No. 2006-A-0030, 2008-Ohio-1892, in which the Eleventh District Court of Appeals held that R.C. 2744.09(B) applies to matters arising from the employment relationship even after the employee has been terminated. The Eleventh District admitted that R.C. 2744.09(B), as written, could be interpreted to mean "that the employee must have been currently employed at the time the tort occurred and at the time the lawsuit was filed," *id*. at ¶ 30, but rejected that interpretation stating that, "[i]f the legislature intended the statute to be as narrow as appellants suggest, it would have been quite simple to limit the application of the statute by stating just that." *Id*. at ¶ 34.

{¶33} Respectfully, R.C. 2744.09(B) says precisely what the Eleventh District rejects. The statute not only uses the word "employee" (meaning one *presently* employed), but also uses the word in conjunction with the word "arises" — that the employee's claim "arises out of the employment relationship." Rules of statutory construction require us to apply "'the rules of grammar and common usage.'" *Stolz v. J & B Steel Erectors, Inc.*, 146 Ohio St.3d 281, 2016-Ohio-1567, 55 N.E.3d 1082, ¶ 9, quoting R.C. 1.42. The word "arises" is present tense, so when used with the phrase "employment relationship," it indisputably means that the employee's claim had to occur

as a result of a current employment relationship (there can be no employment "relationship" if the person is not employed). If R.C. 2744.09(B) was intended to mean what both the Eleventh District and the majority believe, it could have been written accordingly: civil actions by a former employee relative to any matter that arose out of the employment relationship. Or at a minimum, the statute could make clear that it creates an exception to immunity under both circumstances: civil actions by an employee, past or present, relative to any matter arising out of the employment relationship.

{¶34} In any event, to the extent that it is possible to give R.C. 2744.09(B) different interpretations, we must give it the interpretation that is most consistent with the idea that under the Political Subdivision Tort Liability Act, immunity is the rule, not the exception. The Ohio Supreme Court has made it clear that exceptions and defenses to immunity listed in R.C. 2744.02(B) are "in derogation of a general grant of immunity, [so] they must be construed narrowly if the balances which have been struck by the state's policy choices are to be maintained." *Doe v. Dayton City School Dist. Bd. of Edn.*, 137 Ohio App.3d 166, 169, 738 N.E.2d 390 (2d Dist.1999). *See also Wall v. Cincinnati*, 150 Ohio St. 411, 83 N.E.2d 389 (1948) (construing the phrase "open, in repair, and free from nuisance strictly, due to its being in derogation of common-law sovereign immunity); *Wooster v. Arbenz*, 116 Ohio St. 281, 283, 156 N.E. 210 (1927), paragraph three of the syllabus (finding that exceptions to political subdivision immunity "are in derogation of the common law and must therefore be strictly construed[.]"). These principles equally apply to the exceptions to immunity under R.C. 2744.09.

{¶35} I am aware that in *Sampson v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 418, 2012-Ohio-570, 966 N.E.2d 247, where the court interpreted R.C. 2744.09(B) to hold that an intentional tort alleged against a political subdivision qualifies as matter arising out of the employment relationship within the meaning of R.C. 2744.09(B), the plaintiff was no longer employed by the Cleveland Metropolitan Housing Authority when he filed his action.   Sampson's employment status at the time he filed suit would seem to suggest that a plaintiff need not be an employee of a political subdivision at the time he or she  files an action for an intentional tort.   However, Sampson's employment status at the time he filed his claim was neither raised nor addressed by the Supreme Court; the legal issue on appeal was whether an employer intentional tort, which had long been considered to be an act occurring outside of the employment relationship and thus not barred by the Workers' Compensation statutes, *see Blankenship v. Cincinnati Milacron Chems., Inc.*, 69 Ohio St.2d 608, 433 N.E.2d 572 (1982), fell within the R.C. 2744.09(B) exception to immunity.   Given the framing of that issue, the Supreme Court had no occasion to consider whether Sampson was barred from invoking the R.C. 2744.09(B) exception because he was not employed at the time he filed his claim.

{¶36} But even if *Sampson* could be read to indicate that the Supreme Court was not reading R.C. 2744.09(B) to mean that a claimant must be an employee at the time the action against a political subdivision employer is filed, that interpretation would still leave Piazza outside of the exception.   There is no dispute that at the time the statements at issue in this case were made, Piazza had been terminated.   Once terminated, she no

longer had an "employment relationship" with the county, so as a matter of law, the county executive's statements did not arise from an employment relationship.[1] To be sure, the statements were ones related to work or employment at the county agency. However, in R.C. 2744.09(B) the word "employment" specifically modifies the word "relationship" in a very specific way to indicate a relationship where a person performs services for remuneration under a contract of hire. As the statute is written, an act occurring after an employee no longer works for the employer cannot be said to "arise from the employment relationship between the employee and the political subdivision."

{¶37} The Legislative Service Commission report[2] on R.C. 2744.09, 1985 HB 176, summarized the statute as liability provisions for political subdivisions "and their employees," noting that the immunity political subdivisions enjoyed under R.C. 2744.02 do not apply to civil actions "by an employee." Important is that R.C. 2744.09(B) does not refer to a "person" or "anyone" or even a "former employee" as those whose claims fall outside of political subdivision immunity. By using the word "employee" in the present tense, the statute references a current employment relationship where there would

---

[1] The majority's reliance on *George v. Newburgh Hts.*, 2012-Ohio-2065, 970 N.E.2d 1138, ¶ 6 (8th Dist.), is not on point because the opinion makes it clear that allegedly tortious conduct occurred either before George had been terminated or that the termination itself was tortious. That George's alleged harassment continued "in the weeks immediately following his lay off" was a continuation of the tortious conduct that predated his termination.

[2] The Ohio Supreme Court has characterized Ohio Legislative Service Commission's analyses as "legislative history" that it may refer to "when we find them helpful and objective." *Meeks v. Papadopulos*, 62 Ohio St.2d 187, 191, 404 N.E.2d 159 (1980). *See also* R.C. 1.49(C).

be an exception to immunity only for employees with actions against the political subdivision employer that arise out of the employment relationship between the two.

{¶38} The construction that the majority and the *Fleming* case give to the statute could also lead to unintended results.  Because the false light cause of action would accrue when the allegedly defamatory statement is made, it seems   that there would be no point in time when a political subdivision would no longer be exposed to liability for any statements made about a former employee regardless of how long the person has been a former employee, as long as the statement related to the former employee's employment.

{¶39} I share some of the majority's misgivings with the impact of R.C. 2744.09(B) when applied as written.  I recognize, as the majority notes in adopting the decision in *Fleming*, that a strict reading of the statute prevents former employees of political subdivisions — more precisely, former employees whose claims arise after the employment relationship has ended — from being able to sustain their claims against a political subdivision in the face of governmental immunity.  But what the majority fails to recognize is, as harsh or as unfair as that result may be (particularly to people who may be unjustly terminated), carving out an exception to immunity for such a clearly defined group appears to be precisely what the General Assembly intended.  The legislature may plausibly have intended to maintain the immunity of political subdivisions for post-termination statements made about a former employee.  Again, immunity is the rule, so exceptions are to be narrowly construed.

{¶40} Piazza was not an employee at the time the county executive's statements were made, so the statements did not arise out of an employment relationship between an employee and a political subdivision for purposes of R.C. 2744.09(B). I would disapprove *Fleming* and find, as a matter of law, that the county is immune from the false light invasion of privacy action.