[Cite as *Walker v. Piazza*, 2016-Ohio-7996.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

FRANCES M. WALKER

    Appellee

    v.

JULIE PIAZZA, et al.

    Appellants

C.A. No.    16CA010910

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    13CV180405

DECISION AND JOURNAL ENTRY

Dated: December 5, 2016

WHITMORE, Judge.

{¶1} Defendant-Appellants, Midview Local School District and Midview Local School District Board of Education (collectively, "Midview Local"), Susan Bobola, John Kuhn, Lisa Gilchrist, Scott Goggin, and Julie Piazza, appeal from the order of the Lorain County Court of Common Pleas, denying their motion for summary judgment on the basis of statutory immunity. This Court affirms.

I

{¶2} Plaintiff-Appellee, Frances Walker, became a bus driver for Midview Local in 2006. Walker's job at Midview Local consisted of a two-hour shift in the morning and a two-hour shift in the afternoon, with several hours off in between. In February 2012, following a successful election bid, Walker also started working as a fiscal officer for Eaton Township. Walker often went to her office at Eaton Township in between her two shifts at Midview Local, such that she worked at both jobs in a single day. On four separate days in February and March

2012, however, Walker was absent from her job at Midview Local and took paid leave for her absences. There is no dispute that, on those four days, she engaged in activities related to her newly-elected position at Eaton Township.

{¶3} On May 22, 2012, Walker called in sick at Midview Local. Although Walker spent most of the morning at home, she went out mid-morning to buy medicine and stopped at her Eaton Township office on her way home. Unbeknownst to Walker, one of her co-workers at Midview Local, Julie Piazza, became suspicious when she learned that Walker had called in sick. Piazza suspected that Walker was using her paid leave to work at Eaton Township, so she arranged for a phone call to be placed to Eaton Township to check on Walker's availability. The person who ultimately called Eaton Township was John Kaiser, an employee of Piazza's parents. The phone call that Kaiser placed to Eaton Township resulted in Walker contacting the Sheriff's Department and learning that Kaiser was a registered sexual offender. Walker did not learn until after the Sheriff's Department spoke with Kaiser that he had called at Piazza's request.

{¶4} Following the foregoing incident, Walker notified Midview Local of Piazza's conduct, and the school conducted an investigation. Piazza was never subjected to a disciplinary hearing, but received a verbal reprimand regarding her misconduct and a note in her performance evaluation. Meanwhile, John Kuhn, Midview Local's superintendent at the time, conducted a preliminary disciplinary hearing to determine whether Walker had misused her sick leave. The hearing did not result in Walker receiving any disciplinary action. Nevertheless, Walker took issue with Midview Local's handling of the situation between her and Piazza, the insinuation that she had abused her paid leave, and the perceived disparity in the school's treatment of her own alleged misconduct in comparison to Piazza's.

{¶5} Walker initially brought suit against Midview Local, Kuhn, and Piazza, as well as Lisa Gilchrist, Walker's supervisor, and Susan Bobola, Gilchrist's supervisor and the then-acting Director of Facilities Technology and Security. Her suit set forth claims for (1) defamation per se and per quod, (2) negligent and intentional infliction of emotional distress, (3) negligent hiring, supervision, and retention; (4) invasion of privacy; and (5) punitive damages. During discovery, however, Midview Local obtained public records from Eaton Township and learned of four additional days that Walker had taken paid leave from the school while performing duties for the township. Midview Local then instituted disciplinary proceedings against Walker to determine whether she had violated her employment contract on those additional occasions. Midview Local's actions, in conjunction with other discovery that Walker obtained, later caused her to amend her complaint. Walker's amended complaint also named as defendants: (1) John Kaiser, the man who called her office; (2) Sheila Fishburn, Piazza's mother and Kaiser's employer; and (3) Scott Goggin, the new superintendent at Midview Local. Further, her amended complaint added causes of action for retaliation, tortious interference with employee relations, and civil conspiracy.

{¶6} Subsequently, Midview Local, Piazza, Gilchrist, Bobola, Kuhn, and Goggin (collectively, "Appellants") filed a joint motion for summary judgment on the basis of statutory immunity, and Walker filed a brief in opposition. The trial court determined that genuine issues of material fact remained for trial and denied Appellants' motion for summary judgment. Appellants then immediately appealed from the trial court's order.

{¶7} Appellants now appeal from the trial court's final order, denying them summary judgment on the basis of statutory immunity. They raise three assignments of error for our review.

II

<u>Assignment of Error Number One</u>

THE COURT OF COMMON PLEAS ERRED IN FAILING TO FIND MIDVIEW LOCAL SCHOOL DISTRICT BOARD OF EDUCATION AND ITS EMPLOYEES SUED IN THEIR OFFICIAL CAPACITIES IMMUNE FROM LIABILITY PURSUANT TO R.C. 2744.02, WHICH PROVIDES THAT SCHOOL DISTRICTS AND THEIR EMPLOYEES ARE GENERALLY IMMUNE FROM LIABILITY.

{¶8}    In their first assignment of error, Appellants argue that the trial court erred when it denied their motion for summary judgment on the basis of statutory immunity.  They argue that, to the extent Walker brought suit against them in their official capacities, she failed to set forth a genuine issue of material fact tending to show that her claims satisfied any of the statutory exceptions to immunity.  We do not agree that the trial court erred by denying Appellants' motion.

{¶9}    Appellate review of summary judgment is de novo.  *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).  Summary judgment is appropriate under Civ.R. 56 when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C).

{¶10}    The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of the motion. *Id.* at 292-293.  Once this burden is satisfied, the nonmoving party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial.  *Id.* at 293.  The

nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to, or provide, some evidentiary material that demonstrates a genuine dispute over a material fact. *In re Fike Trust*, 9th Dist. Wayne No. 06CA0018, 2006-Ohio-6332, ¶ 10.

{¶11} There is no dispute that Midview Local is a political subdivision that ordinarily would be entitled to immunity under R.C. 2744.02(A)(1). Likewise, there is no dispute that, to the extent Walker brought suit against Piazza, Gilchrist, Kuhn, Bobola, and Goggin in their official capacities, they ordinarily would be entitled to the same immunity as Midview Local because the claims against them "are synonymous with claims against the political subdivision-[Midview Local]." *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 9th Dist. Summit No. 24443, 2009-Ohio-3004, ¶ 17. The question is whether R.C. 2744.02 applies here.

{¶12} Chapter 2744 of the Revised Code does not apply to "[c]ivil actions by an employee * * * against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision * * *." R.C. 2744.09(B). "The purpose of R.C. 2744.09(B) is to protect public employees by allowing them to recover against their employers, who would otherwise be entitled to immunity under R.C. Chapter 2744." *Vacha v. North Ridgeville*, 136 Ohio St.3d 199, 2013-Ohio-3020, ¶ 12. Whether R.C. 2744.09(B) applies in a given case "requires a court to consider whether 'there is a causal connection or a causal relationship between the claims raised by the employee and the employment relationship.'" *Id.* at ¶ 19, quoting *Sampson v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 418, 2012-Ohio-570, paragraph two of the syllabus. If a causal connection or relationship exists, then the political subdivision may not claim immunity. *Vacha* at ¶ 21; *see also Sampson* at ¶ 20-22. When determining whether a causal connection or relationship exists, a court "must look to the factual basis for [the employee-plaintiff's] claim[s]." *Vacha* at ¶ 22.

{¶13} For contextual purposes, we begin by outlining the specific events that occurred here. In her deposition, Walker testified that she awoke very early on May 22, 2012, with a headache and called in sick for her morning shift at Midview Local. When a few hours more sleep did not help, Walker left home to get medication and something to eat. She testified that, at that point it was after 8:30 a.m., and she decided to stop briefly at her office at Eaton Township to see if there were any deposits that needed to be made. While she was there, her secretary notified her that a man had just called to ask whether she (Walker) was in the office. The secretary told Walker that the man had ended the call as soon as he found out that Walker was there. Because Walker wanted to know why the man was looking for her, she asked her secretary to retrieve the man's number from her caller identification log and call him back. Her secretary did so and informed Walker that the man had said he had received all the information he needed before ending the call. Walker testified that she kept the man's number and attempted to trace it when she returned home, but was unsuccessful.

{¶14} The following morning, Walker went to Midview Local and was preparing for her morning shift when Lisa Gilchrist, her supervisor, stopped her. According to Walker, Gilchrist told her that a man had called the school looking for her, but had hung up when he learned that she was unavailable. Walker assumed that the man who had called the school was the same man who had called her Eaton Township office the previous day. Accordingly, at the end of her morning shift, she called the man's number.

{¶15} Walker testified that a man answered her call, but hung up as soon as she identified herself. She then redialed his number, and her call went to voicemail. Walker heard the man identify himself on his voicemail recording as John Kaiser. She left a message for Kaiser, warning him to stop calling and informing him that she was reporting him to the Sheriff's

Department. She then called the Sheriff's Department, provided them with Kaiser's number, and asked them to investigate the situation. Meanwhile, she went to her Eaton Township office for a few hours before the start of her afternoon shift at Midview Local.

{¶16} While she was at her Eaton Township office, a detective from the Sheriff's Department came to speak with Walker about the calls she had received from Kaiser. Walker testified that, during the course of their conversation, she learned that Kaiser was a registered sexual offender and became very distraught. She testified that the detective stayed with her a while longer and then left her to go speak to Kaiser. After he did so, the detective returned and informed Walker that Kaiser had called her at the behest of Julie Piazza, a maintenance secretary at Midview Local. Walker learned that Kaiser worked for Piazza's parents and that Piazza had arranged for him to call Eaton Township because Piazza believed that Walker was abusing her paid leave at Midview Local. Walker testified that, once she learned of Piazza's involvement, she immediately called her union representative and requested a meeting. She then returned to Midview Local and had a meeting with her union representative, her supervisor (Gilchrist), and Susan Bobola, Gilchrist's supervisor and Midview Local's Director of Facilities Technology and Security.

{¶17} Walker testified that she informed her union representative, Gilchrist, and Bobola of Piazza's actions, but that Bobola's reaction was simply to say: "I don't know what you want me to do with this information, Fran." Walker then gave an incredulous response, and Bobola said that she would share the information with John Kuhn, the school's then-acting superintendent. Walker testified that she received a letter from Bobola on May 31, 2012. The letter, however, did not address Piazza's conduct. Rather, the letter notified Walker that, on June

1, 2012, Kuhn would be conducting a preliminary disciplinary hearing to determine whether she (Walker) had misused her sick days at the school.

{¶18} It is not entirely clear from the record the point at which Bobola learned of the incident between Walker and Piazza. Bobola testified that she was not Piazza's immediate supervisor, but that she had known her for several years and they had a friendly relationship. She testified that, "right around May 22[, 2012,]" Piazza called her in the morning, stating that she needed Bobola's help. Piazza stated that she had asked her mother to call Eaton Township to find out if Walker was there because Walker had called in sick at the school. Bobola testified that she did not know why Piazza contacted her directly rather than her immediate supervisor. She also stated that she could not precisely recall the order of the events that occurred here, but that she spoke to Piazza, Gilchrist, and Walker before speaking with Kuhn. At some point, Bobola learned that Piazza's mother had not actually made the call to Eaton Township. Instead, a man who was a registered sexual offender had called looking for Walker.

{¶19} Kuhn testified that Bobola came to speak with him about a situation involving Walker and Piazza. Bobola informed Kuhn that Piazza was "very upset" with herself because she had arranged for someone to check on Walker's whereabouts and knew that she should not have done so. Additionally, Bobola told Kuhn that Walker was upset because she had discovered that Piazza had arranged for a sexual offender to call her. After listening to Bobola, Kuhn directed her "to conduct an investigation with the department * * * to find out exactly what happened." Kuhn testified that he later spoke with Bobola about her investigation and also personally spoke to Piazza. He testified that he found it unnecessary to schedule a preliminary disciplinary hearing for Piazza because she knew she had erred by acting outside the scope of her

responsibilities and was remorseful for her conduct. Kuhn testified that Piazza received a verbal reprimand and that her misconduct was later documented in her performance evaluation.

{¶20} According to Kuhn, he scheduled a preliminary disciplinary hearing for Walker on June 1st because he wanted to make sure that there was no confusion about the school's leave policy. He testified that he did not have any intention of taking disciplinary action against Walker at the meeting, but viewed it as an opportunity to have "a discussion of clarity" and to "share proactively what the personal leave policy was * * *." According to Walker, however, Kuhn ended the meeting by stating that Piazza would receive a verbal reprimand and Walker "would have a five year open disciplinary put in [her] file."

{¶21} On May 22, 2013, Walker filed suit against Appellants. Discovery commenced, and Midview Local made a public records request from Eaton Township regarding Walker's work history there. Then, on September 4, 2013, the school sent Walker a letter, notifying her of its intention to conduct another preliminary disciplinary hearing. Specifically, Scott Goggin, the school's new superintendent, informed Walker that the school intended to investigate whether she had improperly taken paid leave to perform duties for Eaton Township on multiple days in February and March 2012. The hearing went forward in October 2013 and, as a result of the hearing, Walker was found to have misused her paid leave on four occasions. For her misuse of leave, Goggin imposed upon Walker an eight-day suspension without pay. Walker accepted the suspension and waived her right to appeal it.

{¶22} As previously noted, Walker's amended complaint set forth claims for: (1) defamation per se and per quod; (2) negligent and intentional infliction of emotional distress; (3) negligent hiring, supervision, and retention; (4) invasion of privacy; (5) retaliation; (6) tortious interference with employee relations; (7) civil conspiracy; and (8) punitive damages. Her

defamation claims alleged that Appellants, particularly Piazza and Goggin, falsely accused her of abusing her leave from Midview Local and damaged her professional reputation by sharing those accusations with others. Her claims for infliction of emotional distress alleged that Piazza caused her severe emotional distress when she enlisted the help of a sexual offender to harass Walker at her places of employment. They further alleged that Appellants caused her additional emotional distress when they embraced Piazza's accusations and singled her out for discipline. Walker's negligent hiring, supervision, and retention claim alleged that Midview Local failed to properly supervise and train its employees to conduct even-handed, unbiased investigations, follow proper procedures, and understand the school's written policies. Her invasion of privacy claim alleged that Piazza, along with her mother and Kaiser, intruded upon Walker's private affairs when they investigated her whereabouts for a purpose and in a manner that would be highly offensive to a reasonable person. Likewise, her tortious interference with employee relations and civil conspiracy claims arose out of their investigation into her alleged wrongdoing and Piazza's decision to falsely accuse her of abusing paid leave. Walker's retaliation claim alleged that Appellants took adverse employment action against her in the form of additional, retroactive discipline after she exercised her right to bring suit against them. Finally, based on all of the foregoing conduct, Walker alleged that Appellants were liable for punitive damages.

{¶23} Appellants argue that the trial court erred by failing to award them summary judgment because R.C. 2744.09(B) is inapplicable here. They argue that Walker's claims against them arise strictly out of Piazza's initial decision to conduct an independent investigation. Because Piazza "was acting completely on her own, and without any request or even a suggestion that she do so by her employer or anyone else at Midview [Local]," Appellants

claim that there is no causal connection between Walker's claims and her employment relationship with Midview Local. (Emphasis sic.)

{¶24} The allegations set forth in Walker's complaint essentially fall into one of two categories. The first category concerns the allegations that arise out of Piazza's conduct in choosing to investigate Walker's whereabouts, to enlist the help of a registered sexual offender, and to formally accuse Walker of misconduct by reporting her to the school. The second category concerns the allegations that arise out of Appellants' *response* to Piazza's investigation and accusations. Those allegations pertain to the investigation that Appellants' conducted once they learned what had happened, the distinct courses of discipline that the school pursued against Walker and Piazza, and the subsequent, retroactive disciplinary proceedings that occurred after Walker filed her lawsuit. In arguing that Walker's claims lack a causal connection to her employment, Appellants fail to appreciate the foregoing distinction between her allegations.

{¶25} It was Walker's position that Bobola and Piazza were friends and that Bobola failed to conduct a thorough and balanced investigation. At the time these events occurred, Piazza's immediate supervisor was Todd Whitesel. In his deposition, Whitesel testified that he first learned of the situation between Piazza and Walker when Piazza came to his office to tell him what had happened. Piazza told Whitesel that she had asked her mother to call Eaton Township to check on Walker and that the Sheriff's Department had become involved. Piazza then asked whether she should inform Bobola of the situation. Bobola was Whitesel's supervisor at the time, and he agreed that Piazza should speak with her. Whitesel testified that he did not participate in the investigation that ensued because Bobola handled it. He acknowledged that he and Bobola generally handled situations involving his employees together and that he did not know why he was not involved in the investigation as it pertained to Piazza. As to Piazza's

discipline, he testified that he included in her performance evaluation the following single statement: "If she has a concern with other employees she should share them with the appropriate supervisor."

{¶26} Walker presented evidence that, after Kuhn instructed Bobola to investigate the situation between Walker and Piazza, Bobola sent an email to Piazza. In the email, Bobola arranged a meeting with Piazza and asked her to write down what had happened, but also wrote: (1) "Please do not lose any sleep or let this ruin your beautiful long weekend"; and (2) "DON'T WORRY ABOUT IT THOUGH." (Emphasis sic.) There is no dispute that Bobola made the foregoing statements before she conducted her formal investigation in this matter.

{¶27} Walker presented as evidence both the written statement that Piazza drafted at Bobola's request and the report that the Sheriff's Department created as a result of their investigation. In her written statement, Piazza wrote that she asked her mother to call Eaton Township to find out if Walker was there because she believed Walker was working there while on paid leave. She wrote:

> The phone call made to the town hall merely satisfied my curiosity. It was not my intention to make any claims or judgments against [Walker] as I was not the one to make the phone call verifying that she was double dipping * * *. I was merely suspect that these things were happening. I notified Central Office (Susan Bobola) about the call I had asked my mother to make when I was made aware that [Walker] had called the Sheriff's Department.

Piazza did not mention Kaiser in her written statement. Yet, the Sheriff's Department spoke with Kaiser before completing a written report, and that report provides as follows:

> The male that called Ms. Walker is John Kaiser * * *. According to Kaiser he was told to call Walker by Julie Piazza from Midview Schools. Kaiser stated that Walker is a bus driver for Midview Schools and called in sick the other day. Kaiser stated that Piazza had him call to see if Walker was working at the Town Hall while she was using sick time from Midview Schools. Kaiser stated that Piazza wanted him to use his cell phone so the call couldn't be traced back to

Piazza. Kaiser stated that Piazza is his bosses['] daughter, which is how he knows her and why she asked him to call.

Bobola admitted that she never read the Sheriff Department's report and never attempted to secure a copy of it for her investigation. She also admitted that she never attempted to speak to either Kaiser or Piazza's mother. Accordingly, Piazza was never asked to account for the discrepancies between her written statement and the Sheriff Department's report.

{¶28} As previously set forth, Piazza was never subjected to a preliminary disciplinary hearing. Instead, she spoke privately with Bobola and Kuhn and received a verbal reprimand along with a notation in her performance evaluation. Meanwhile, the school subjected Walker to a preliminary disciplinary hearing even though, according to Kuhn, he had no intention of taking disciplinary action against her at the meeting. Kuhn stated that he viewed the meeting as an opportunity to clarify the school's leave policy. Yet, no meeting was held in response to Piazza's actions to clarify the school's policies on harassment, workplace ethics, following the proper chain of command, or conducting personal business during work hours.

{¶29} With regard to her retaliation claim, Walker set forth evidence that, after she filed suit, she was subjected to additional disciplinary action for leave that she had taken several months before the incident that occurred between her and Piazza. Multiple individuals, including Goggin, Kuhn, Gilchrist, and Bobola, testified that they were not aware of Midview Local having ever taken disciplinary action against any employee, other than Walker, for an abuse of paid leave. Moreover, Walker set forth at least some evidence that Midview Local offered not to discipline her if she agreed to dismiss her lawsuit. Marsha Minney, Walker's union representative, testified that she was part of the disciplinary proceedings that the school conducted in October 2013. Minney testified that, following the disciplinary hearing, Midview

Local offered Walker an opportunity to enter into a last chance agreement in exchange for the dismissal of her suit. Minney also sent an email to Walker about the offer that reads as follows:

[T]he board has offered a last chance agreement with details to be worked out yet if you combine the lawsuit and the discipline into one package.

Please let us know as soon as possible what you wish to do.

Nevertheless, Minney later sought to change her deposition testimony. On her deposition errata sheet, Minney wrote that she misspoke when she testified that Midview Local made the offer for the last chance agreement because she meant to testify that the union had proposed that offer. She did not explain, however, why her email to Walker contained the same error. Instead, Midview Local introduced the affidavit of Trina Molnar, the regional union representative who also attended Walker's October disciplinary hearing. Molnar averred that Minney's email contained a mistake because she (Molnar) was the individual who suggested the last chance agreement. According to Molnar, Midview Local never suggested that Walker dismiss her suit in exchange for the resolution of the disciplinary charges.

{¶30} To the extent that Walker brought suit against Appellants in their official capacities, we cannot conclude that the trial court erred by denying their motion for summary judgment on the basis of statutory immunity. The allegations in Walker's complaint are not limited to Piazza's conduct alone. *See Vacha*, 136 Ohio St.3d 199, 2013-Ohio-3020, ¶ 22 (existence of causal relationship for purposes of R.C. 2744.09(B) depends on "the factual basis for [the employee-plaintiff's] claim"). Rather, Walker's complaint also contains allegations that arise out of Appellants' response to Piazza's misconduct and to Walker's lawsuit. *Compare Jopek v. Cleveland*, 8th Dist. Cuyahoga No. 93793, 2010-Ohio-2356, ¶ 44-48 (city not liable for prosecutor's decision to investigate and charge an officer in a deadly shooting after the department had already found the shooting justified). Walker set forth evidence that Piazza

received favorable treatment during Midview Local's initial investigation in this matter. Specifically, she set forth evidence that Bobola failed to include Piazza's immediate supervisor in the investigation, failed to speak with the Sheriff's Department or secure a copy of their report, and told Piazza, at the start of the investigation, not to worry about it. Walker also set forth evidence that Midview Local subjected her to a preliminary disciplinary hearing while Piazza merely had a private conversation with Kuhn and an innocuous statement placed in her performance evaluation. Further, Walker set forth evidence that her lawsuit resulted in Midview Local taking further disciplinary action against her for conduct that occurred before the incident with Piazza. There was evidence that Walker was the only employee that Midview Local had ever disciplined for an abuse of paid leave and that it had offered not to discipline Walker if she dismissed her lawsuit. Although Appellants produced some evidence to the contrary, they failed to demonstrate a lack of genuine issues of material fact for trial. *See Dresher*, 75 Ohio St.3d at 292-293.

{¶31} The record reflects that genuine issues of material fact exist as to whether Walker's claims against Appellants arise out of her employment relationship with Midview Local. *See* R.C. 2744.09(B). Consequently, the trial court did not err by denying Appellants' motion for summary judgment on the issue of statutory immunity. Appellants' first assignment of error is overruled.

Assignment of Error Number Two

THE COURT OF COMMON PLEAS ERRED IN FAILING TO FIND SUSAN BOBOLA AND JULIE PIAZZA IMMUNE FROM INDIVIDUAL LIABILITY PURSUANT TO R.C. 2744.03(A)(6).

{¶32} In their second assignment of error, Appellants argue that the trial court erred when it denied their motion for summary judgment as to the claims Walker brought against

Bobola and Piazza in their individual capacities. They argue that both Bobola and Piazza are statutorily immune from suit under R.C. 2744.03(A)(6). Because genuine issues of material fact remain for trial, we do not agree that the trial court erred when it refused to enter judgment in favor of Bobola and Piazza.

{¶33} As previously noted, we review summary judgment determinations de novo. *Grafton*, 77 Ohio St.3d at 105. Summary judgment is appropriate under Civ.R. 56 when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, citing Civ.R. 56(C).

{¶34} R.C. 2744.03(A)(6) provides, in relevant part, that an employee of a political subdivision is immune from suit unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or]

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

In her brief in opposition to summary judgment, Walker alleged that Piazza was not immune from suit because her actions were manifestly outside the scope of her employment and she acted with malicious purpose, in bad faith, or in a wanton or reckless manner. *See* R.C. 2744.03(A)(6)(a) and (b). She alleged that Bobola was liable because she acted in a wanton or reckless manner. *See* R.C. 2744.03(A)(6)(b). Consequently, in reviewing the trial court's judgment, we limit our review to those allegations.

{¶35} This Court has held previously that

"'conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business.'" *Curry v. Blanchester*, 12th Dist. Clinton Nos. CA2009-08-010, CA2009-08-012, 2010-Ohio-3368, ¶ 30, quoting *Jackson v. McDonald*, 144 Ohio App.3d 301, 307 (5th Dist.2001). "For an act to fall within the scope of employment, it must be 'calculated to facilitate or promote the business for which the [employee or agent] was employed.'" *Johnson v. Godsey*, 2d Dist. Clark No. 2012 CA 80, 2013-Ohio-3277, ¶ 32, quoting *Osborne v. Lyles*, 63 Ohio St.3d 326, 329 (1992). "In general, if an act is committed within the scope of employment, it will be authorized, either expressly or impliedly, by the employer." *Johnson* at ¶ 32. "'It is only where the acts of state employees are motivated by actual malice or other [situations] giving rise to punitive damages that their conduct may be outside the scope of their state employment.'" *Curry* at ¶ 30, quoting *Jackson* at 307.

*Thomas v. Bauschlinger*, 9th Dist. Summit No. 27240, 2015-Ohio-281, ¶ 25.

{¶36} The terms "'[w]illful,' 'wanton,' and 'reckless' describe different and distinct degrees of care and are not interchangeable." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraph one of the syllabus. "One acts with a malicious purpose if one willfully and intentionally acts with a purpose to cause harm." *Moss v. Lorain Cty. Bd. of Mental Retardation*, 185 Ohio App.3d 395, 2009-Ohio-6931, ¶ 19 (9th Dist.). "Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson* at paragraph two of the syllabus. "Bad faith is defined as a 'dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive or ill will.'" *Moss* at ¶ 19, quoting *Lindsey v. Summit Cty. Children Servs. Bd.*, 9th Dist. Summit No. 24352, 2009-Ohio-2457, ¶ 16. "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson* at paragraph three of the syllabus. Finally, "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is

unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus.

**Julie Piazza**

{¶37} Although Appellants acknowledge that Piazza's actions were ill-advised and outside the scope of her ordinary duties, they argue that her actions fell short of being "manifestly" outside the scope of her employment because they were not motivated by actual malice. *See* R.C. 2744.03(A)(6)(a). They further argue that Piazza did not act in bad faith or in a wanton or reckless manner because she could not have foreseen the consequences of her actions when she merely called her mother and asked her to check on Walker's whereabouts. *See* R.C. 2744.03(A)(6)(b). According to Appellants, Piazza's misconduct did not amount to anything more than negligence.

{¶38} Appellants' position that Piazza did not act manifestly outside the scope of her employment is difficult to reconcile with their earlier assertion that she acted "completely on her own, and without any request or even a suggestion that she do so by her employer or anyone else at Midview [Local]." (Emphasis sic.) Appellants do not dispute that Piazza's duties as a Maintenance Secretary do not include investigating co-workers for the purpose of determining if they are abusing paid leave. Moreover, there is no dispute that Midview Local disciplined Piazza for her misconduct. While Appellants argue that Piazza is still entitled to immunity because her actions were not motivated by actual malice, the record contains evidence to the contrary.

{¶39} In her written statement to Bobola, Piazza wrote that she was "frustrated" by the "continuous misuse and abuse of days taken off by bus drivers" when members of the community were "paying taxes for such misuse." While Piazza claimed that she asked her

mother to call Walker's office strictly to satisfy her own curiosity, the report that the Sheriff's Department completed contains several statements that detract from her claim. The report provides that Piazza asked Kaiser, not her mother, to call Walker's office. It further provides that Piazza instructed Kaiser to use his cell phone to call Walker's office so that the call could not be traced back to her. It is reasonable to conclude that Piazza did not want the call traced back to her because she was acting with either: (1) the intention to harm Walker's professional reputation, *see Moss*, 2009-Ohio-6931, at ¶ 19; (2) with a dishonest purpose, *see id.*; or (3) with conscious disregard of the known risk that Walker's reputation could be harmed by her conduct, *see Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, at paragraph four of the syllabus. Accordingly, the trial court did not err when it concluded that genuine issues of material fact remain for trial.

{¶40} We note that Walker never alleged that Piazza, as her co-worker, owed her any particular duty, so we cannot conclude that there is evidence that Piazza acted in a wanton matter. *See Anderson* at paragraph three of the syllabus. Nevertheless, genuine issues of material fact remain as to whether Piazza acted manifestly outside the scope of her employment with Midview Local and whether she acted with malicious purpose, in bad faith, or in a reckless manner. *See* R.C. 2744.03(A)(6)(a)-(b). Accordingly, Piazza is not entitled to judgment as a matter of law on the issue of immunity. To the extent it pertains to Piazza, Appellants' second assignment of error is overruled.

**Susan Bobola**

{¶41} Appellants argue that Bobola is entitled to summary judgment on the issue of statutory immunity because her actions were limited to carrying out "a reasonable investigation at the behest of her employer * * *." They note that, as a result of Bobola's investigation, Piazza

received a verbal reprimand and a written admonishment. Appellants argue that Walker cannot maintain suit against Bobola strictly because "she wishes a coworker was disciplined more severely."

{¶42} Walker set forth evidence that, when she initially informed Bobola what Piazza had done, Bobola responded: "I don't know what you want me to do with this information, Fran." Moreover, there was evidence that, at that point, Bobola was already aware of the situation. Bobola stated that she could not recall the exact order of the events that occurred here, but that, "right around May 22[, 2012]," Piazza called her in the morning and stated that she needed Bobola's help with the current situation. Bobola did not testify that she went directly to Kuhn to inform him what Piazza had done. Nor did she inform Walker on the afternoon of May 23, 2012, that she had already spoken to Piazza about the incident. Instead, there was testimony that Bobola agreed to take the matter to Kuhn only after Walker reported what had happened and made it clear that she wanted the situation to be addressed.

{¶43} Walker set forth evidence that Bobola single-handedly investigated the situation with Piazza rather than involving Piazza's direct supervisor. At the start of her investigation, Bobola specifically wrote to Piazza not to "lose any sleep" over the situation even though she could not yet have fully appreciated what the investigation would entail. Moreover, there was evidence that, at the conclusion of her investigation, Bobola essentially presented Kuhn with Piazza's version of the events, as she did not speak with Piazza's mother, Kaiser, or the Sheriff's Department. Because she did not speak with the latter individuals, Piazza was not called to account for the discrepancies between her written statement to Bobola and the Sheriff Department's report.

{¶44} Bobola admitted that she did not know Walker particularly well, but that she had known Piazza "for quite a few years" and that the two sometimes socialized as part of a group. It was Walker's position that Bobola acted in a wanton and reckless manner when she failed to conduct a thorough investigation as to Piazza and instead focused her investigation on Walker's allegedly improper use of leave, as reported by Piazza.

{¶45} In reaching our conclusion as to Bobola's individual immunity, we are mindful that we must view the facts at issue in a light most favorable to Walker and resolve any doubt in her favor. *See Temple*, 50 Ohio St.3d at 327. In doing so, we must conclude that genuine issues of material fact remain as to whether Bobola acted either wantonly or recklessly by failing to conduct a thorough, even-handed investigation on behalf of the school. *See Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, at paragraph three and four of the syllabus. Because genuine issues of material fact remain, Appellants have not shown that the trial court erred by denying their motion for summary judgment. To the extent their second assignment of error concerns Bobola, it is overruled.

Assignment of Error Number Three

THE COURT OF COMMON PLEAS ERRED IN FAILING TO ISSUE AN OPINION ANALYZING THE LEGAL QUESTION OF IMMUNITY.

{¶46} In their third assignment of error, Appellants address their concern that the trial court, in its judgment entry, did not elaborate on its immunity analysis. They ask this Court, in the event that we find their brief lacking under App.R. 12(A)(2), to remand this matter with instructions to the trial court to fully analyze the issue of immunity in its judgment entry. Because we have not found Appellants' brief lacking under App.R. 12(A)(2), we conclude that their third assignment of error is moot, and we decline to address it.

III

**{¶47}** Appellants' first and second assignments of error are overruled. Their third assignment of error is moot, and we decline to address it. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

BETH WHITMORE
FOR THE COURT

MOORE, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JESSICA K. PHILEMOND and MATTHEW R. AUMANN, Attorneys at Law, for Appellants.

GINO PULITO and CHRISTOPHER J. CAFFAREL, Attorney at Law, for Appellee.